IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KERRY A. LAVENDER, II,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Civil Action No.: 5:14-CV-01637-RDP |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Acting Commissioner of Social Security,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Kerry A. Lavender, II brings this action pursuant to Title XVI of Section 1631(c) of the Social Security Act ("Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.       Proceedings Below**

Plaintiff's mother filed an application for SSI on behalf of Plaintiff on June 13, 2011. (Tr. 174-191). She initially alleged that disability began on October 10, 2008, but the onset date was later amended to June 13, 2011, the same date the application was filed. (Tr. 192, 202). The Social Security Administration denied Plaintiff's application on September 8, 2011. (Tr. 79). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") J. Dennis Reap on January 10, 2013. (Tr. 38-76, 100). In his decision, dated March 8, 2013, the ALJ determined that Plaintiff had not been under a disability within the meaning of section

1614(a)(3)(C) of the Act since June 13, 2011, the date the application was filed. (Tr. 14-31). The ALJ also found that Plaintiff had not been under a disability within the meaning of section 1614(a)(3)(A) of the Act since March 21, 2012, the day Plaintiff attained age eighteen. (*Id.*). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), Plaintiff had exhausted all administrative remedies making this case ripe for review by this court.

**II.   Facts**

Plaintiff was born on March 22, 1994. (Pl.'s Br. 2). Plaintiff was under the age of eighteen at the time the application was filed, but he was over the age of eighteen at the time of the hearing.[1] (Tr. 14). Plaintiff alleges he has been disabled since June 13, 2011, due to "diabetes, seizures, slow mental processing, and borderline intellectual functioning." (Pl.'s Br. 3).

During his alleged period of disability, Plaintiff received treatment primarily from two different sources: Dr. James Mize, a general physician, and Dr. Joycelyn Atchison, an endocrinologist. (Tr. 65, 489-531, 555-577). For purposes of review, it is undisputed that Plaintiff suffers from diabetes and borderline intellectual functioning. Therefore, the court will address the evidence concerning Plaintiff's alleged seizures and slow mental processing.

Plaintiff cites several portions of the record to support his claim that he suffers from seizures. First, he cites Dr. Mize as noting that on May 5, 2000, "Plaintiff had a 'seizure this A.M.'"[2] (Pl.'s Br. 3). Next, Plaintiff again cites Dr. Mize, who reported on November 16, 2011, "that he has lot [sic] seizures with normal blood sugar levels."[3] (Pl.'s Br. 3). Plaintiff also cites a

---

[1] Consequently, the ALJ had to consider whether Plaintiff was disabled under § 1614(a)(3)(C) of the Act while Plaintiff was under the age of eighteen and whether Plaintiff was disabled under § 1614(a)(3)(A) of the Act after Plaintiff attained the age of eighteen. 20 C.F.R. § 416.924(f).

[2] (Tr. 404).

[3] (Tr. 491).

record from Children's Health System of Alabama, which described his alleged seizures as "characterized by loss of consciousness, foaming at the mouth, and tonic clonic movements. He is very tired after the seizure for approximately 30-40 minutes, and does not remember anything that happens during the episodes. Reports some headaches after the seizures, some of which are waking him up at night."[4] (Pl.'s Br. 3). Lastly, Plaintiff cites Dr. Mize again from an April 23, 2012 report, which noted "seizure 1 year."[5] (Pl.'s Br. 4). However, it appears from the record that these accounts merely were the doctors documenting Plaintiff's subjective complaints rather than an actual diagnosis. Moreover, Dr. Atchison provided a letter to the ALJ which stated that Plaintiff has "no disability at present." (Tr. 592).

Plaintiff likewise cites to several places in the record to support his allegation that he suffers from slow mental processing. Dr. Rogers, a non-treating psychological consultant, is the one medical source of record that may corroborate Plaintiff's claim. (Tr. 549). Dr. Rogers found:

> Conversation was slow. He had extreme difficulty expressing himself. Thought Process: Blocking was observed … Stream of talk and mental activity were extremely slow and sluggish. Speech was slow … His speed of mental processing was extremely slow … Kerry reads but does not make change with sufficient accuracy for trade level activities. Social response will be below average. He is capable of being cooperative with peers and supervision and maintaining a routine work cycle in a sheltered employment situation … Response to frustration will be poor … The speed of mental processing was slow; and probably the slowest that I have seen in my entire practice; it took him over 5 hours what should have taken about 1 ½ to 2 hours, which for all practical purposes, would preclude employment.

(Tr. 550-552). Furthermore, Plaintiff was in an Individualized Education Program ("IEP") in high school. There is some discrepancy as to whether Plaintiff was in the IEP because of mental deficiencies or merely because it gave him added monitoring for his diabetes. Plaintiff was given

---

[4] (Tr. 520).

[5] (Tr. 495).

extra time to complete exams and was allowed to take his exams in areas free from distraction. (Tr. 245). Plaintiff graduated high school with an Alabama Occupational Diploma (Tr. 242), and he plans to try to enroll at a community college. (Tr. 51). Dr. Rogers also administered a Wechsler Adult Intelligence Scale-III test that showed Plaintiff had a verbal IQ of 79, a performance IQ of 75, and a full scale IQ of 72. (Tr. 551). However, the test showed an inconsistent pattern of achievement and the 16 Personality Factor test results were invalid. (*Id.*). Furthermore, according to Plaintiff's school record, Plaintiff achieved a normal non-verbal IQ score of 101 in 2004. (Tr. 260). That score placed Plaintiff in the average range for his age. (*Id.*).

### III.   The ALJ's Decision

For a child to be determined disabled as defined under the Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g. Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F.Supp. 2d 1239, 1241 (N.D. Ala. 2006). First, an ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child

cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found not to be engaging in substantial gainful activity, the analysis proceeds.

In the second step, an ALJ must determine whether the child has a medically determinable impairment or a combination of medical impairments that is "severe" under the Act. *Id.* At this stage of the analysis, "severe," as understood under Social Security regulations, requires that the child have a medically determinable impairment, or an impairment or combination of impairments that is greater than a slight abnormality that causes no more than minimal functional limitations. *Id.* Absent such a "severe" impairment, the child may not claim disability. *Id.*

Third, an ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id.* Alternatively, the child may also be declared disabled if the child's impairment or combination of impairments functionally equals a Listing. *Id.* In determining whether the child's impairment or combination of impairments functionally equals a Listing, the ALJ must consider the child's functional capacity with regard to six domains.[6] 20 C.F.R. § 416.926a. To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitation in at least two of the domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme" and is equivalent

---

[6] A domain is a broad area of functioning. The six domains considered in determining whether a child's impairment functionally equals a Listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

5

to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, an ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. § 416.926a(a). An ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. § 416.926a(c).

The test for assessing whether an adult claimant is disabled under the Act uses the same first three steps as the test for assessing whether a child is disabled under the Act (from above), but the test for adults has two additional steps. If an adult (1) is not engaging in substantial gainful employment, (2) has a severe impairment, and (3) does not meet or medically equal a Listing, the next step is to determine the claimant's residual functional capacity ("RFC"), which refers to the person's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). At this step, an ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If an ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, an ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the

existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). When seeking to determine whether jobs exist that the claimant can perform given his RFC, an ALJ may elicit testimony from a vocational expert ("VE") by asking hypothetical questions to establish whether someone with the same limitations as the claimant would be able to perform work in the national economy. *Id.*

In the present case, the ALJ determined that Plaintiff had not engaged in substantial gainful employment and had two severe impairments – diabetes mellitus and borderline intellectual functioning – that satisfy step two of the analysis. (Tr. 18-19). The ALJ then found that Plaintiff does "not have an impairment or combination of impairments that met or medically equaled one of the [Listings]." (Tr. 19). Likewise, the ALJ concluded that Plaintiff did not functionally equal any Listing. (*Id.*). In reaching that conclusion, the ALJ found that Plaintiff had less than marked limitations in "acquiring and using information," "caring for yourself," and "health and physical well-being." (Tr. 24, 26-27). The ALJ found that Plaintiff had no limitations in the other three domains. (Tr. 24-26). Therefore, the ALJ concluded that Plaintiff was not disabled as defined under the provisions of the Act before attaining age 18. (Tr. 27).

Next, the ALJ assessed whether Plaintiff was disabled under the Act after attaining age 18. The ALJ first determined that Plaintiff had not developed any new impairment since attaining age 18. (*Id.*). As there were no new impairments to consider, the ALJ again concluded that Plaintiff had not engaged in substantial gainful activity and also that Plaintiff had two severe impairments, neither of which met or medically equaled any of the Listings. (Tr. 27-28). The ALJ then concluded that Plaintiff "has had the residual functional capacity to perform light work

7

as defined in 20 C.F.R. 416.967(b). However, the claimant can only perform simple, routine, repetitive tasks." (Tr. 29).

Given Plaintiff's limited RFC, the ALJ consulted with a VE to determine any jobs in the national economy that would be suitable for Plaintiff to perform. (Tr. 71). Considering Plaintiff's limitations, the ALJ concluded that Plaintiff was still "capable of making a successful adjustment to … work that exists in significant numbers in the national economy …." namely as a tagger, a sorter, or a packager. (Tr. 30). Once the ALJ determined that Plaintiff was capable of adjusting to work that exists in significant numbers in the national economy, the ALJ concluded that Plaintiff "has not been under a disability, as defined [under the Act] since March, 21, 2012, the day [Plaintiff] attained age 18." (*Id.*).

## IV.   Plaintiff's Argument for Reversal

Plaintiff raises two arguments on appeal. Both arguments essentially contend that the ALJ's decision was not supported by substantial evidence. First, Plaintiff contends that the ALJ failed to give Dr. Rogers's opinion proper weight. Second, Plaintiff contends that the ALJ failed to propose a proper hypothetical question to the Vocational Expert, which resulted in the ALJ improperly concluding that there were jobs in significant numbers in the national economy suitable for Plaintiff. More specifically, Plaintiff contends that the ALJ failed to consider the effect Plaintiff's seizures would have on his ability to perform the jobs listed by the Vocational Expert.

## V.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.

2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V.   Discussion

After careful review, the court finds the following arguments of Plaintiff are without merit and the ALJ's decision is due to be affirmed.

### a.   The ALJ Appropriately Weighed Dr. Rogers's Opinion.

Plaintiff argues that the ALJ should have given more weight to Dr. Rogers's opinion. When determining whether a claimant is disabled, the ALJ must always consider the medical opinions in the case along with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b) (effective June 13, 2011 to March 25, 2012). Regardless of its source, the ALJ must evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(d). The opinions of a psychological consultant can be given weight only insofar as they are supported by evidence in the case record. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Psychological consultants are highly qualified experts "in the evaluation of the medical issues in disability claims under the Act." *Id.* And although the ALJ is not bound by the opinion of a psychological consultant, the ALJ may not

9

ignore the opinion. *Id.* The ALJ must explain the weight given to such opinions in the decision. *Id.* However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In his decision, the ALJ addressed Dr. Rogers's opinion and, in fact, gave it considerable weight. (Tr. 21). The ALJ noted Plaintiff's borderline intellectual functioning as one of his severe impairments, primarily because of Dr. Rogers's opinion. (*Id.*). This conclusion was reached even though the ALJ believed "the full record shows some doubt as to this diagnosis." (*Id.*). And although the ALJ gave serious weight to Dr. Rogers's opinion, Plaintiff asserts that the ALJ should have gone one step further and accepted Dr. Rogers's conclusion that Plaintiff would be limited to a "sheltered work situation" that would effectively preclude him from any gainful employment.[7] (Pl.'s Br. 12-13). The court disagrees.

The ALJ is responsible for reviewing the evidence and making appropriate conclusions of law. 20 C.F.R. § 404.1527(f)(2). So, while the ALJ must take a psychological consultant's opinion into account, it is for the ALJ to make the final determination of disability. 20 C.F.R. § 404.1527(f)(2)(i). Therefore, here, the ALJ was not required to accept Dr. Rogers's conclusion about Plaintiff's inability to engage in gainful employment, especially in light of the fact that Dr. Rogers is a psychological consultant who likely was not fully informed of the sorts of jobs that might be available for Plaintiff in the national economy.

Moreover, there was other evidence in the record that was in conflict with Dr. Rogers's opinion. Not only did Plaintiff test within the normal IQ range in 2004 (Tr. 260), but Dr. Heilpern, the state reviewing physician, also reviewed Plaintiff's medical history and determined that Plaintiff had less than marked limitation in three domains and no limitation in the other three domains. (Tr. 588-89). Given the evidence in the record and Dr. Heilpern's opinion, this court is

---

[7] (Tr. 522-23).

convinced that the ALJ applied the proper legal standards when weighing Dr. Rogers's opinion, and therefore the ALJ's decision to give Dr. Rogers's opinion only partial weight is supported by substantial evidence.

Plaintiff also contends that because Dr. Rogers opined that Plaintiff suffers from slow mental processing, the ALJ committed reversible error by not including slow mental processing as a severe impairment. (Pl.'s Br. 17-19). This argument is without merit. At the second step of the test, the ALJ must determine that a claimant has at least one severe impairment to move on to step three. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (concluding that even if the ALJ erred by not indicating whether an impairment is severe at step two, the error was harmless because all step two requires is a finding of one severe impairment). Step two is merely a threshold question: a box that is either checked yes or no. Once the box is checked yes, then the analysis proceeds to step three. *Id.* And at the later steps of the analysis, the ALJ is obligated to consider all of the claimant's impairments, whether classified as severe or not. *Id.*

Here, the ALJ appropriately considered all of Plaintiff's alleged impairments when concluding that Plaintiff did not meet, medically equal, or functionally equal a Listing. (Tr. 19-30). So, the ALJ applied the correct legal standards when concluding that Plaintiff's slow mental processing was not a severe impairment, and his determination is supported by substantial evidence.

### b. The ALJ Posed a Proper Hypothetical Question to the Vocational Expert.

Plaintiff argues that the hypothetical question the ALJ posed to the Vocational Expert did not encompass all of his impairments, and therefore the ALJ's conclusion that there were jobs in

significant numbers in the national economy that Plaintiff could perform is not supported by substantial evidence. That argument is off the mark.

In the last part of the analysis, an ALJ must prove the existence, in significant numbers, of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. When seeking to determine whether jobs exist that the claimant can perform, an ALJ may elicit testimony from a Vocational Expert by asking the Vocational Expert hypothetical questions to establish whether someone with the same limitations as the claimant would be able to perform work in the national economy. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (*quoting Wilson v. Barnhart*, 284 F.3d at 1227) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments").

The ALJ asked the Vocational Expert what jobs would be available for Plaintiff in the national economy considering Plaintiff's age, education, RFC, and work experience. (Tr. 71). Considering Plaintiff's severe impairment of borderline intellectual functioning, the ALJ narrowed the inquiry even further and asked the Vocational Expert if any jobs would exist that Plaintiff could perform with the additional limitation of "simple, routine, repetitive work tasks involving occasional interaction with public, co-workers, and supervisors." (*Id.*). The Vocational Expert listed three jobs that would fit all of the criteria: tagger, sorter, and packager. (*Id.*). Plaintiff argues that the ALJ should have limited the inquiry even further to take into account Plaintiff's alleged slow mental processing and seizures.[8] (Pl.'s Br. 20-23). Plaintiff believes that if these alleged impairments had been taken into account, the Vocational Expert would have

---

[8] Plaintiff cites to *Pendley v. Heckler* for the proposition that the ALJ committed reversible error by not including Plaintiff's alleged slow mental processing and seizures in the hypothetical question. 767 F.2d 1561, 1563 (11th Cir. 1985). That case is easily distinguishable from this one. In *Pendley*, the ALJ failed to account for a severe impairment in his hypothetical question. In this case, there is substantial evidence that supports the ALJ's conclusion that neither the slow mental processing nor the seizures were severe impairments. Thus, no such error occurred.

concluded that there were no jobs in the national economy that Plaintiff could perform. (*Id.*). That argument misses the mark.

As discussed above, the ALJ's decision not to include Plaintiff's alleged slow mental processing as a severe impairment was supported by substantial evidence. Therefore, the critical question for the court to consider is whether substantial evidence supports the ALJ's conclusion that Plaintiff's alleged seizures were not as severe as Plaintiff claims. If substantial evidence supports the ALJ's conclusion, the ALJ did not commit reversible error by neglecting to account for the alleged seizures in the hypothetical question he posed to the Vocational Expert.

Although Plaintiff claims to suffer from seizures, the evidence Plaintiff cites to support his claim is inconclusive, at best. First, it is unclear as to whether there is any objective medical evidence that Plaintiff actually suffers from seizures. While Plaintiff cites to many places in the record which purport to support his claim, the nature of the reports seem to suggest that the doctors merely were documenting Plaintiff's subjective accounts of his seizures. Second, what little objective medical evidence there is with regard to the seizures seems to suggest that Plaintiff was not suffering from seizures, at least not with the intensity and frequency Plaintiff claimed. For instance, Dr. Atchison recommended Plaintiff undergo an MRI of his brain, which yielded normal results in December 2011. (Tr. 513, 522). When Plaintiff returned to Dr. Atchison in May 2012, Plaintiff did not report any seizure activity. (Tr. 506-510). And while Dr. Atchison did refer Plaintiff to a neurologist to examine the seizures further, there is no evidence in the record from a neurologist that supports Plaintiff's claim. (Tr. 573). Lastly, and perhaps most notably, Dr. Atchison provided a letter to the ALJ for the purposes of Plaintiff's hearing in which she reported that Plaintiff has "no disability at present." (Tr. 592). Although this is not dispositive, it is record evidence the ALJ could consider. Given the medical evidence of record

and Plaintiff's treating physician's opinion that Plaintiff is not disabled, the court concludes that there is substantial evidence to support the ALJ's conclusion that Plaintiff's alleged seizures were not as severe as Plaintiff claims. Therefore, the ALJ posed a proper hypothetical to the Vocational Expert that encompassed all of Plaintiff's impairments.

**VII.  Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 3, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE